UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROSE MARY DEJARNETT, ) | |
| ) | |
|     Claimant, ) | |
| ) | |
| vs. ) | Case No. 2:16-cv-1154-CLS |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Rose Mary DeJarnett, commenced this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ's finding that claimant had the residual functional capacity to perform a limited range of light work was not supported by substantial evidence. Upon review of the record, the court concludes that claimant's contention lacks merit, and that the Commissioner's ruling is due to be affirmed.

The ALJ found that, despite suffering from the severe impairments of cervical and lumbar degenerative disc disease, right knee osteoarthritis, and hypertension, claimant retained the residual functional capacity to perform light work, with the following additional limitations:

> claimant can frequently climb ramps or stairs and can occasionally balance, stoop, kneel, or crouch. She is not able to climb ladders, ropes, or scaffolds and she is not able to crawl. She is not able to perform around work hazards or in concentrated exposure to extreme hot or cold temperatures, wetness, vibrations, or in environments of fumes, odors, dust, gases, poor ventilation, etc.[1]

Claimant asserts that finding was not supported by substantial evidence, and that the ALJ should instead have found her capable of performing only sedentary work.

Social Security regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in

---

[1] Tr. 16.

carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §404.1567(a). Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The distinction between light work and sedentary work is important here because claimant, who was fifty years old on her alleged onset date, is classified as an individual "closely approaching advanced age" for purposes of the Social Security Administration's Medical-Vocational Guidelines ("Grids"). Medical-Vocational Rule 201.10 mandates a finding of "not disabled" for an individual closely approaching advanced age who, like claimant, has a limited or less education and no transferable vocational skills, and who is limited to sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.10. In other words, if claimant is limited to sedentary work, she is disabled under the Grids. If she is only limited to light work, she is not disabled.

Claimant asserts that she should have been limited to performing, at most,

sedentary work, due to her lower back, neck, and knee pain. There is no dispute that claimant did, indeed, suffer from and receive treatment for pain in those areas. Even so, it is not the mere existence of a medical condition like pain that determines disability. Instead, the relevant consideration is the effect of claimant's impairment, or combination of impairments, on her ability to perform substantial gainful work activities. *See* 20 C.F.R. § 404.1505(a) (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)).

The record does not support any *functional limitations* greater than those imposed by the ALJ. X-rays taken on January 6, 2011 revealed only *mild* degenerative changes in claimant's lumbar spine, *minimal* degenerative disc disease in her cervical spine, and *mild* osteoarthritic changes in her right knee.[2]

The opinions of the consultative examiners also do not undercut the ALJ's residual functional capacity finding. Social Security regulations provide that, in

---

[2] Tr. 307-10.

considering what weight to give *any* medical opinion, the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. George A. Nelson examined claimant on March 1, 2013.[3] Claimant presented to Dr. Nelson for an evaluation regarding her low back, neck, and knee pain. She reported sharp, constant back pain at a level 9 out of 10 that increased with bending over, sitting, and general physical activity. Her neck pain was intermittent, recurring every few weeks, but when it was present it was at a level 8 out of 10. Her knee "gave out" on her occasionally, and she experienced numbness with prolonged sitting.[4] Claimant told Dr. Nelson that she stopped working as a medical record supply clerk in 2009 because of her back pain. Upon examination, Dr. Nelson noted that claimant appeared to be in "mild distress" from back pain when she walked into

---

[3] Tr. 392-96.
[4] Tr. 393.

the room.⁵  Claimant walked very slowly, but without ataxia.  The curvature of her spine was normal.  She demonstrated tenderness at the C5 and L5-S1 vertebrae, but she had a negative straight leg raising test.  She had full grip strength and motor strength in all muscles.  She experienced slightly decreased lateral flexion in her neck and moderate restriction of lumbar range of motion due to pain.  Dr. Nelson assessed claimant with chronic low back pain due to degenerative disc disease of the lumbar spine, chronic neck pain due to degenerative disc disease of the cervical spine, and right knee osteoarthritis.  He noted that claimant experienced "low back pain without complications, cervical pain without sign of radiculopathy (symptoms only), and knee pain consistent with [osteoarthritis]."⁶  He stated the following with regard to claimant's functional limitations:  "*Reportedly*, patient could walk or stand for 2 hours during an 8 hour day with frequent breaks.  She could sit for 2 hours with frequent breaks.  Her [range of motion] is limited with no bending or heavy lifting."⁷

The ALJ assigned "significant weight" to Dr. Nelson's findings because Dr. Nelson

> had the opportunity to review the claimant's available medical record, examine her in person, and his findings and opinion that the claimant's low back pain was without complications, that her cervical pain was without signs of radiculopathy, and that her knee pain was consistent

---

⁵ Tr. 394.

⁶ Tr. 395 (alteration supplied).

⁷ Tr. 396 (alteration and emphasis supplied).

6

with osteoarthritis, is supported by detailed reports and is consistent with the record when considered in its entirety and consistent with the aforementioned residual functional capacity.[8]

Even so, the ALJ afforded "no weight" to Dr. Nelson's assessments about claimant's "reported" range of motion and ability to sit, stand, and walk, because those assessments were "based on the claimant's own reports and [were] inconsistent with Dr. Nelson's findings and subsequent medical records."[9]

The other consultative examination was conducted by Dr. Rex Harris on August 21, 2014.  Dr. Harris stated:

> This is a 50 year old female who is complaining of neck pain, back pain, and right knee pain.  She states that she takes Naprosyn and Neurontin for her joint symptoms.  She did not bring a list of her other medications, which are for hypertension.  She is followed at Cooper Green.  She has had an arthroscopy on the right knee.  She has had no other procedures.  She last worked in a nursing home doing multiple tasks.
>
> Physical exam reveals that she is 5'7 and weighs 189 pounds.  She was identified by photo from driver's license.  There is full range of motion of the neck, shoulders, elbows, wrists, and fingers.  Grip is normal. Pinch is normal.  She can open and close doors, pick up small objects off the table, and can lace and unlace shoes.  Reflexes are 1+ equal in the upper extremities.  Sensation is normal in the upper extremities.  Negative Tinel's bilaterally.
>
> Lumbar flexion is 90 degrees.  Extension and lateral motion is 25 degrees.  There is full range of motion of the hips, knees and ankles. There is no effusion of either knee.  There is no instability of either

---

[8] Tr. 20.

[9] *Id.* (alteration supplied).

knee. There is no heat or redness. Neuro circulation intact. There is full range of motion of the ankles. Toe extensors are normal. The claimant can toe and heel walk and can squat and arise.

By medical records, she has mild degenerative arthritis of the cervical and lumbar spine and mild arthritis of the right knee.

It is my medical opinion that this claimant is capable of *at least sedentary work* in the work place.[10]

Dr. Harris also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form. He indicated that claimant could occasionally lift and carry up to ten pounds, but could never lift or carry more than ten pounds. She could sit for thirty minutes at a time and four hours total, stand for thirty minutes at a time and three hours total, and walk for ten to fifteen minutes at a time and one hour total during a work day. She could occasionally reach, handle, finger, feel, push, and pull with both hands, and could occasionally operate foot controls with both feet. She could occasionally climb stairs and ramps, but could never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. She could never work around unprotected heights or moving mechanical parts, but she could occasionally operate a motor vehicle and be exposed to humidity, wetness, pulmonary irritants, extreme cold and heat, and vibrations. She could not perform activities like shopping or travel without a companion for assistance, but she could ambulate without an assistive device, walk a block at a reasonable pace on rough or uneven surfaces, use standard

---

[10] Tr. 568 (emphasis supplied).

public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed herself, care for her personal hygiene, and sort, handle, and use paper and files. The limitations imposed were due to claimant's back and neck pain, and they had lasted or could be expected to last for twelve consecutive months.[11]

> The ALJ afforded Dr. Harris's assessment "partial weight," stating:
>
> Dr. Harris also had the opportunity to review the claimant's available medical record, examine her in person, and his physical findings, that she had full range of motion in her neck, shoulders, elbows, wrists, lumbar spine, hips, knees, and ankles[,] is consistent with the record as a whole and given great weight.  While his narrative supports that the claimant was able to work, in that she could at least perform sedentary work, the Administrative Law Judge finds that this opinion is given lesser weight as it is inconsistent with his own findings and the record as a whole, which indicates that she is less limited than opined by Dr. Harris[,] and that she could perform light exertional work with additional limitations.[12]

The ALJ properly considered the opinions of the two consultative examiners, and his decision to reject any finding that claimant experienced disabling functional limitations was supported by substantial evidence. There is ample evidence in the record to support the conclusion that claimant is capable of performing a limited range of light work. Claimant asserts that the ALJ impermissibly "played doctor" by making a residual functional capacity finding that differed from the findings of the

---

[11] Tr. 571-76.

[12] Tr. 21-22 (alterations supplied).

consultative examiners. But it is the ALJ's responsibility, not that of a physician, to determine a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."). *See also Robinson v. Astrue,* 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 6th day of April, 2017.

_____
United States District Judge